Good morning. Judge Thomas, Judge McEwen, Judge Gould, may it please the Court. My name is Jeffrey Sturr. With me is my colleague, John Bullock. We represent the intervener appellants, Attorneys David Barton, Katya Lancero, and the law firm, Burns-Barton. I'd ask to reserve three minutes of my time for rebuttal. This Court should vacate the District Court's orders because the Court committed two legal errors. It failed to provide the attorneys due process and failed to follow controlling law in ordering them to pay more than $300,000 in attorney's fees without finding that they caused those fees to be incurred. As this Court is well aware, procedural due process requires a District Court to ensure that an attorney has notice and an opportunity to be heard before imposing sanctions. The District Court in this case failed to do so. Mr. Barton and Ms. Lancero did not know that the District Court intended to sanction them until the Court's first sanction order was issued from the bench on March 22. They were not informed by the Court's scheduling order, by the motion at issue, or by the Court during the preceding two hearing days that the Court was considering sanctioning them. They did not have an adequate opportunity to be heard before the District Court issued its order from the bench. Over objection, Ms. Lancero was compelled to testify on the first day of the hearing, and Mr. Barton testified on the second day of the hearing. But they did not know at the time that the Court was considering sanctioning them. Had they known that, they would have conferred with their counsel, their client rather, about the need to get separate counsel or sought their own counsel. And the testimony they gave, to the extent it involved their own conduct, was necessarily conscribed by their duties to the client. The consequences of the District Court's order were, as in Tillman, immediate. The referral to the bar caused reputational... and put them at risk for their license. Unlike the Tillman case, the consequences here were irremedial. In Tillman, as the Court will recall, the California bar did not act on the referral, and there was information provided to the panel at the time of argument that the bar did not intend to act. In this case, that's not the case. The matter has been referred to the state bar. It is pending. And as in many state bar proceedings, our state bar takes the position that court findings have preclusive effect. One of the differences between this case and Tillman is that in Tillman, there were some specific findings made, and here there's a general referral. Do you think that makes any difference? I don't think it does, Your Honor, with respect. The Court did make specific findings. In issuing its order from the bench, it made specific findings as to the conduct of these lawyers. It then ordered the lawyers to refer the matter to self-report to the state bar, which necessarily implicated all of the Court's findings. I'm not sure that Tillman goes as far as you say, but I'm open to the argument that a referral is a sanction. Technically, it's not. It's just a referral. Your Honor, I would agree that if it was simply a referral to the bar with nothing more, then that arguably is not a sanction. But in this case, where the Court made specific findings without providing the lawyers with notice and then ordered them to self-report to the bar, those findings become essential to the referral. They are given to the bar. And so effectively, it is similar, Your Honor, if I may, to Tillman. In that case, the Court made its own findings, issued its own referral. This is essentially the equivalent of that. The Court made findings and then ordered the lawyers to self-report. And so I think in that sense, Your Honor, this is a sanction. I am concerned about the notice, but I'm also trying to understand the practical import of that because during the hearing, which you say, well, they didn't know that the lawyers were the object of the hearing, and yet the statements say things like they're saying that this law firm, my law firm, was engaged in the fraud. I'm being accused of misconduct and attempted cover-up. So throughout the hearing, the testimony and argument makes quite clear that they're thinking of this as if the lawyers and the law firm are being targeted. And so I was mostly struck by the absence in your briefing as to what would be different in the next round of the hearing. Let's say notice had been given because you don't offer up or proffer why the scope of that hearing would be different than whether you call it a new hearing or a re-hearing. Judge McEwen, the notice requirement, as the Court's case in Cole makes clear in other cases, is notice of the sanctions that may be, the fact that sanctions may be imposed and the type of sanctions. Before the hearing began, there was no indication that sanctions would be sought. The motion that was pending before the Court was against the client, not against the lawyers. And at no time while there was discussion beforehand about whether the lawyers could be called to testify, there was no allegation that they themselves had engaged in misconduct or could be subject to sanctions. So when the hearing began, there was no indication that they could be sanctioned. It was not until the second day of the hearing when Swisher's counsel alleged that they had acted improperly and colluded with the client. That is only when Mr. Barton then said, I think we should have a hearing. I'm paraphrasing here, Your Honor. But he said, if the Court, if I read the motion as being against the client, if the motion is directed to us, we should have a separate hearing. Importantly, the District Court did not respond at that point. She simply, the District Court simply ordered him to testify. So the difference here, I think, is in Tillman, the Court made as the hearing evolved, it became clear the Court had concerns about the lawyers' conduct. Nothing of the type occurred here at all where the lawyers could understand that the Court was concerned about their conduct and might sanction them. And it was not until the last day of the hearing when the Court made findings and then referred them to the Bar. So that, I think, is the distinction. The notice, if you, no notice was provided of the sanctions that could be sought or might be imposed, rather. The mere prospect that the lawyers could be called as a witness was all that was present before the hearing began, and it's in the middle of the hearing on the second day that there's a suggestion that they engaged in improper conduct. Well, and the lawyers say, it looks like we are being accused. And then they ask for, in that case, we should have a separate hearing. But was there any response by the Court to that? Not at all. If you read the transcript, Your Honor, Mr. Barton made that request, and the Court then said, I'm going to only allow Swisher's counsel to pursue three questions. Let's proceed. And if you read the transcript, Your Honor, there's not a suggestion from the District Court on the first day or the second day of the hearing that the Court believed that the lawyers had engaged in improper conduct and could be subject to inherent authority sanctions. The other question is, did they have an opportunity to be heard, assuming that the notice was inadequate? There was a response filed briefing on the subject, and I think the attorneys did present that they said they did not knowingly present false evidence. I guess in getting back to Judge McKeon's question, what would have been different if the notice had been adequate? What different evidence would have been presented? Well, Your Honor, as the Supreme Court said in Matthews v. Eldridge, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. No, I take your point. And what happened here, Your Honor, is that opportunity was never provided. I'll assume that, but I'm just kind of curious. What would have been different? If the Court had followed what I believe is an established procedure, if it had concerns as the hearing unfolded about the lawyers' conduct, it could have issued an order to show cause. It could have said, Counsel, I believe there's an issue here, suspended the hearing, issued an order to show cause, allowed the lawyers then to discuss, A, can they continue to represent the client, and B, should they have their own counsel, and then have a proceeding at which, and we cited a case in which a district judge in Arizona has done exactly this, allow an opportunity for the parties to be heard and evidence to be presented. What instead happened was the evidence was brought in under the circumstances that were misleading without the lawyers really understanding or recognizing that they needed to defend their own conduct, and that then became the basis for the Court's findings, which the Court adhered to throughout this process. But on that point, they still were obligated to testify truthfully, correct? Yes, Your Honor. Okay. So what they testified to at that hearing is still on the table at the second hearing. If you were to succeed on notice and if they determined they needed independent counsel because of potential conflicts or otherwise with the client, and then they were back at a hearing on their conduct, this testimony would still be on the table, correct? But it would have been corrected, I think. Your Honor, the record reflects in the briefing that they were finally allowed to submit to the Court through declarations was an acknowledgment that the testimony was inadvertently incorrect and needed to be corrected. Ms. Lancero said that. And then under the advice of counsel, they believed that Mr. Barton's testimony had corrected it. If there had been a redo, Ms. Lancero would have testified, corrected her testimony, and the Court would have had that record. She says knowledge of the plan. The partner then comes back and says, well, no, there wasn't knowledge of the plan. And so that was in the firm's mind where things stood, that she, the associate, was basically being thrown under the bus and that that was incorrect testimony on her part? Not that she was thrown under the bus, if I may, Ms. McEwen. She acknowledged that her testimony under the circumstances was incorrect. She did not expect to be testified, to testify, and she gave incorrect testimony. We've acknowledged that. And she would have corrected it. She intended to testify but did not because of health reasons and others. Well, and others. So the last day of the hearing is a week later, correct? The last day of the hearing was on the 22nd. There was an expansive time between the three hearings. Right. So is any explanation given to the Court in these documents as to why she didn't show back up to testify? What was submitted to the Court was they believed the record had been corrected and that there was not a need for her to testify. If I may, Your Honor, if you have any other questions on the due process issues, if I may, because my time is running short, is the District Court also committed, we believe, legal error in ordering Mr. Barton, Ms. Lancero, and Burns-Barton to pay more than $300,000 in legal fees as a sanction pursuant to its inherent authority. And we think the Court clearly failed to follow the law. Goodyear requires that the District Court, in imposing inherent authority sanctions, establish a causal link between the litigants' misbehavior and the legal fees paid by the opposing party. In this case, the Court determined that approximately $153,000 of fees were incurred as a result of Mr. Claussen's conduct but made no finding as to why these attorneys had also caused those fees. And then it went on to double the sanction and impose another $153,000 without a finding that there's any causal connection between the attorney's conduct and the fees incurred. Thank you, counsel. I'll reserve the balance of my time. Thank you. Thank you. Good morning. May it please the Court, my name is Pavneet Singupal. I'm appearing on behalf of the appellees whom I will be collectively referring to as Swisher. In the case below, the trial court made specific findings, and they're too numerous to recite all of them, but in brief summary, the trial court judge found that the defendants committed a fraud upon that court, and that specific fraud was facilitated by former defense counsel David Barton, Katya Lansero, and the law firm of Burns-Barton. The court further fined that defense counsel engaged in a pattern of willful deception and attempted to defile the very temple of justice. So the issue presented is when confronted with this type of exceptionally egregious misconduct by members of the State Bar of Arizona, whether a trial court has the discretion to fashion an appropriate remedy to address the fraud visited upon both the trial court judge as well as my client, Swisher. That may be, but first we have this initial question of notice, and we have case law that says whenever the court imposes sanctions on an attorney, at a minimum the attorney should be afforded notice and an opportunity to be heard. And I know you talk about inquiry notice, but is there anything here in terms of notice from the court that the court is looking at sanctions against the lawyers themselves? Yes, Justice McKeown, absolutely. Well, first of all, let's start with why these lawyers, David Barton, Katya Lansero, were actually in court. They were in the court. No, no. You can go to that later. I'm really trying to find out what was the notice. The notice was, first of all, they were appearing in response to an evidentiary hearing set by a trial court judge on Swisher's second motion for sanctions. And the sanctions were against the client. Is that not correct? At that point, that is correct. However, if Your Honor were to look at the record and see in terms of the notice that was provided, the trial court judge required the parties to submit their witness list. That witness list is part of the record. On that witness list are listed attorneys David Barton and Katya Lansero. But that's not all. Why is that notice that there might be sanctions against those attorneys as opposed to the sanctions that were moved for that were against the client? Your Honor, because the entire issue of calling the lawyers to testify was to explain their false claim to the trial court that their characterization of the facts and evidence of a Southern Arizona plan as having never been formulated was a mistake or poor word choice. These are their words. So the issue that the trial court was confronting is whose mistake and whose poor word choice? Are you, defense counsel, claiming that your own client lied to you? Or is this a spin that you are now putting on the facts because you have been caught because the Southern Arizona plan has, in fact, been produced? The same plan that you claim was never formulated. So what they were required to do is testify, and obviously, they're a lawyer, so the privilege applies. There was argument before the trial court, before they were called to testify, that the reason that they must testify is under the crime-fraud exception. And the trial court specifically found that the privilege had been sufficiently waived in a manner to require defense counsel to do the unusual, which is appear on the witness stand and answer questions under oath. But you know, that's far different from getting notice that you're individually liable, because your response would be different. If you're called to testify, you may say, I might be in trouble. But if you say, if the court had informed them that sanctions were being considered against the firm, the response would have been different. They obviously would have gotten counsel, and maybe the testimony would have been different. I don't know. But I mean, I think without notice, there's a problem here. Your Honor, I would submit that there is actually no problem in that they did have notice. When you are an attorney and the trial court finds that you are going to have to testify and ask questions under oath, and there has been a sufficient waiver of the privilege, then I would say that it is far-fetched in the extreme for that same defense counsel to contend that they did not have notice. In addition... My counsel, could I interject a question, please, on this notice? Couldn't they be called as witnesses to testify about a sanction against Clawson? Yes, Your Honor, they could. But in this instance, by having them testify as to their own conduct, they clearly knew that they were facing sanctions. It is... Your client didn't ask for sanctions against them. Your Honor, we did ask for sanctions, but I believe Your Honor is referring to the second motion for sanctions, and I understand the point that you are making. How do you respond to the argument advanced by your colleagues here that it's a different thing if you are representing your client and there can be a waiver of privilege to testify, but if the sanction is against the attorney himself or herself in this case, then you would be entitled to have separate counsel because there may be a conflict in terms of the position taken and the reasons that certain things were or were not turned over. So how does that get remedied in the middle of a hearing on sanctions against the client? Well, Your Honor, first of all, bear in mind that on day one of the hearing, Ms. Lancero was the first called to testify, and Mr. Barton, who has three decades of experience, acted as her counsel. He objected on her behalf. He made various arguments, and... Is he not? No, Your Honor. Why? Because Ms. Lancero was on the stand. He was objecting to questions Ms. Lancero was being asked. No, but that still doesn't make any sense to me. I mean, I've seen situations where this happens in the middle of a hearing. All of a sudden, the lawyer is called to testify, and the question is, you know, who is the other lawyer representing? It was never clear that he was representing her as opposed to the client. No, Your Honor, I believe, actually, if you read the transcript, it would be clear that he was, in fact, acting as Ms. Lancero's counsel. Tell me what was said that would all of a sudden transform him from counsel for the client to counsel for his firm. Well, first of all, Your Honor, he was acting as Ms. Lancero's counsel because he was objecting to having Ms. Lancero answer questions specifically that went to Ms. Lancero's liability and to his own liability as well as to the liability of his firm. As Your Honor has pointed out herself, he characterized this entire proceeding, he being David Barton, as an attack on his firm and as an attack on him and as a travesty of justice visited upon him and his co-counsel. So he clearly knew. But I would also add, Your Honor, that Your Honor made, I believe, the correct point previously in questioning my opponent, which is the testimony is still there. You're now claiming a technicality that the court allegedly didn't give you notice, which I respectfully disagree with. But what would have been different? First of all, when Ms. Lancero was put on the stand and the judge stated that she Your Honor, I never expected here to testify. I ask that you suspend the hearing and allow me to obtain separate counsel. Although I would say that if you're a lawyer and you're put on a witness list, then it is extremely far-fetched not to show up with your own attorney and to later claim you had no idea what could be visited upon you. Now, let's ask as a practical question. If it were determined because of precedent in our court that notice was not sufficient and that there was not sufficient inquiry notice, then you would be back in court and have another hearing. And so what would be the prejudice to your client, assuming additional attorney's fees were available if you were to prevail again? The prejudice would be, in addition to the attorney's fees, the fact that this proceeding would not be concluded. My client would not recover or be able to execute on the judgment, and that this entire proceeding would have to be unnecessarily redone. Because I think what Your Honor was pointing to in her prior questioning is, even if you want to suspend disbelief and contend that Ms. Lancero and Mr. Barton did not have notice on that first day, what happened on the second or the third day? Remember, this hearing was not back-to-back. Let me understand. The main difference, were there to be a rehearing, is there would be additional fees incurred, which could be awarded as appropriate, and the delay on execution of the judgment would occur, correct? That's right, Your Honor. And the judgment that you're talking about is the sanctions judgment? Yes, Your Honor. So it's the same thing. I mean, if the sanctions were reimposed, then it's a question of time is money in terms of execution. But it all revolves or devolves around the hearing on notice, right? Yes, Your Honor. But I would also point out that it would serve no purpose to have a further investment of judicial resources on this. Isn't that always the case with these arguments on procedural due process? I mean, we hear that often, is that there's a violation of procedural due process, and there is. You correct the procedure, and the outcome may be the same. Your Honor, that may be. But I don't believe that you could find too many cases such as this one, where there is testimony under oath spread over three days on March 2, March 15, and March 22. So I believe that the question would be that even if this argument were indulged from the other side, they're stuck with the testimony that they presented under oath, and they have no answer to why they did not appear with separate counsel on the second two days that were spread apart by weeks. They didn't appear with counsel on March 15. They certainly knew on the second day of hearing what was going on and what the seriousness of the situation was, and they certainly knew on March 22. Now, my opposing counsel made a representation to the Court that Ms. Lansero was sick on the second day, on March 15. That begs the question of why she did not appear on the third day. They easily had the opportunity to be heard and present any witnesses of their choice on the second or third day and to appear with counsel. But let's face facts here. The reason that they did not appear with counsel is not this concocted story of not having noticed. It's because they contended that this entire court proceeding was a travesty of justice. That was their argument, and an unfounded attack upon them, which clearly it wasn't. The Court, you know, once they've made the statements, which you've referred to and I've referred to, where they said, oh, it looks like they're attacking me or my firm, neither you nor the Court said, well, in fact, we are seeking sanctions against the lawyers, not just the client. Was that ever put on the record? Your Honor. Well, that calls for a yes or no answer, and then you can explain. Was that ever put on the record? To my recollection, during the three days of hearing, the Court did not warn Ms. Barton or Lancero. It was taking their testimony, but it did not warn them, by virtue of what you're testifying to, you are facing sanctions. But that's an inherent power that the Court has. You're running out of time, so I want to get to one other issue. As to the $150,000 award, I don't see any finding of causation linked to this firm. How do you think that complies with Goodyear? Your Honor, first of all, Goodyear states, and thank you for giving me the opportunity to address this. First of all, Goodyear specifically states that all attorney's fees and costs from the beginning of the case or from any phase of the case on forward may be awarded in exceptional cases. And the Court here may be finding that this is an exceptional case. Indeed, how could it not be, given that defense counsel facilitated a fraud upon the Court and engaged in such serious misconduct? So there are two holdings under Goodyear. One is whether or not this is an exceptional case in which the but-for analysis does not apply. And this is a but-for case. I'm sorry, this is an exceptional case. I said causation, which I misspoke on. But you still have to tie it to fees incurred. And the Court doesn't seem to do that with the $150,000 change. Your Honor, my time has expired. May I answer that last question? Certainly. Your Honor, if you look at the ruling, the Court did issue two awards of $153,800. That first award of $153,800, the Court goes through meticulous detail to list each and every attorney's fees entry that the Court believes would not have been caused or would not have occurred but for the misconduct. It then awards another $153,800 in compensatory fees based on its overall sense of the holding in Goodyear that the Court does not have to be a green lampshade accountant. But none of that, I would suggest, is relevant because the Court also found under Goodyear that this is an exceptional case where it could have awarded all fees or fees from any point forward that it deemed appropriate. Thank you, Your Honor. Thank you, counsel. We'll hear rebuttal. I thank the panel for its thoughtful questions, and I'm a little hesitant to do this, but I think to quote what this Court has said, Swisher's counsel has acknowledged the Court did not at any time in the hearing give notice to the attorneys they could be sanctioned. And what the Court has previously said is— But what Mr. Uphoff said was, look, in the middle of the hearing, your clients kind of woke up and realized, hey, they're after us, and your clients never said, stop, we need to get separate counsel. So isn't that a bit of a two-way street here? I don't think so, Your Honor, if I may, because the point is the Court never made that argument. The Court never said, and this is what your precedent, Cole, requires, more than that the lawyer was aware of sanctionable conduct, but the district court must provide notice of the potential sanctions and the reasons for the sanction. That wasn't done here, Your Honor, and we think that's fundamental. There was a failure to provide due process. On Goodyear, I think we've made our points well in the brief. Even the exceptional case requires a causal connection. The district court made no attempt to draw a causal connection between the second $150,000 and did not make a causal connection in the joint and several award of $150,000, and we think that was error under Goodyear and under this Court's primus decision, which requires the Court to draw that causal connection between the fees incurred and the lawyer's conduct. Thank you, counsel. Thank you both for your arguments and for the presentation and your briefs. It's been very helpful to the Court, and we'll be in recess for the morning. All rise.
judges: THOMAS, McKEOWN, GOULD